UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

KYRON MOORE,

                   Plaintiff,

                   **MEMORANDUM & ORDER**

      v.                   11-CV-3625 (MKB)

KINGSBROOK JEWISH MEDICAL CENTER,

                   Defendant.

-----------------------------------------------------------------x

MARGO K. BRODIE, United States District Judge:

     Plaintiff Kyron Moore, appearing *pro se*, brings the above-captioned action against

Defendant Kingsbrook Jewish Medical Center ("Kingsbrook") alleging (1) discrimination based

on Plaintiff's race and national origin and (2) retaliation, in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Defendant moves for summary judgment on

both claims. The Court heard oral argument on May 13, 2013. For the reasons set forth below,

Defendant's motion is granted.

## I.    Background

### a.  Plaintiff's Employment

     In March 2006, Plaintiff, a 27-year-old African American male from Trinidad and

Tobago, was hired as a security guard by KHS Security Agency, LLC ("KHS")[1] and assigned to

work at Kingsbrook, a not-for-profit health care institution located in Brooklyn, New York. (Def.

---

[1] Although in its moving papers Defendant mentioned in a footnote that Plaintiff was
employed by KHS, not Kingsbrook, and argued that Kingsbrook is not a proper party in this
action, (Def. Mem. 1 n.1), Defendant conceded at oral argument that KHS is a wholly owned
subsidiary of Kingsbrook, and therefore Kingsbrook is an employer under Title VII, and a proper
party to this lawsuit.

56.1 ¶¶ 3–5, 12–19; Pl. Dep. 13:16–15:1, 52:10–53:10, 79:23–83:15.)[2]  As of summer 2006,

Plaintiff was assigned to work as a security guard at Kingsbrook's Pierre Toussaint Clinic (the

"Clinic") four days a week — Mondays, Tuesdays, Wednesdays and Fridays.  (Def. 56.1 ¶¶ 25,

27, 29; Pl. Dep. 89:14–90:18, 95:5–96:11, 97:4–98:15; 131:11–24.)  The Clinic was open five

days a week from approximately 8:00 a.m. to 5:00 p.m. and closed on weekends.  (Def. 56.1

¶¶ 28, 34; Pl. Dep. 97:4–98:15, 131:11–132:7.)  Herbert Allen, another security guard, worked at

the Clinic on Thursdays, and Calvin Douglas, a "floating" security guard, was assigned to work

---

[2]  Plaintiff failed to submit a statement in opposition to Defendant's summary judgment motion pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("56.1 Statement").  Defendant argues that the facts as set forth in its 56.1 Statement should be deemed admitted.  (Def. Reply Mem. 3.)  "Generally, a plaintiff['s] failure to respond or contest the facts set forth by the defendant[] in [its] Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed."  *Young v. Nassau Univ. Med. Ctr.,* No. 10-CV-00649, 2011 WL 6748500, at *1 n.2 (E.D.N.Y. Dec. 22, 2011) (quoting *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003)) (internal quotation marks omitted); *see also Bank of America, N.A. v. Fischer*, No. 11-CV-2044, 2013 WL 685614, at *2 (E.D.N.Y. Feb. 25, 2013) (court deemed admitted all material facts set forth in plaintiff's 56.1 Statement where pro se defendant failed to submit required response); *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (if the moving party properly notified a pro se litigant of Rule 56 requirements pursuant to Local Rule 56.2, "[p]ro se litigants are then not excused from meeting the requirements of Local Rule 56.1"); Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").  However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Liang v. Café Spice SB, Inc.*, No. 09-CV-1306, 2012 WL 5988766, at *1 n.1 (E.D.N.Y. Nov. 29, 2012) (quoting *Holtz*, 258 F.3d at 73).  Because of Plaintiff's *pro se* status and in view of the fact that he has responded to and opposed Defendant's motion in writing and at the oral argument on May 15, 2013, the Court will review Plaintiff's opposition, deposition and supporting papers for factual disagreements with Defendant's 56.1 Statement.  *Battle v. Day Care Council*, No. 11-CV-4043, 2012 WL 3055574, at *1 n.1 (S.D.N.Y. July 26, 2012) ("Where parties fail to file Rule 56.1 statements of fact, the court may choose to accept all factual allegations of the opposing parties as true for the purposes of deciding the motion for summary judgment, or may alternately 'opt to conduct an assiduous review of the record.'" (citation omitted)).  The Court will only deem admitted those facts in Defendant's Local Rule 56.1 Statement that are supported by admissible evidence in the record. *See Liang,* 2012 WL 5988766, at * 1 n.1; *Battle*, 2012 WL 3055574, at *1 n.1.

at the Clinic on days when Plaintiff and Allen were unable to work.  (Def. 51.1 ¶¶ 30, 31; Pl. Dep. at 97:4–98:15, 131:11–14; Culbert Decl. ¶ 14.)  According to Plaintiff, he was "an exemplary employee who consistently received compliments and praise from KHS and Clinic management."  (EEOC Charge of Discrimination App. A attached to Compl. ("App. A") ¶ 7.)

The parties agree that the essential duties and responsibilities of a security guard at KHS included "(i) preventing theft; (ii) securing buildings and grounds; (iii) reporting security incidents immediately to security management; (iv) ensuring only authorized personnel are admitted onto hospital property; (v) providing timely and accurate incident reports; and (vi) demonstrating professionalism," as described in a document entitled "KHS Security, Security Guard Duties."  (Def. 56.1 ¶ 36; *see* Hoey Decl. Ex. 2, KHS Security, Security Guard Duties; Pl. Dep. 108:12–109:15.)

According to Defendant, "Kingsbrook's 'Incident Reporting' policy requires that all incidents that 'result in damage to property or involve missing articles' be promptly reported in writing to management, and states, *inter alia*, that in addition, 'All employees . . . are responsible to immediately report to his/her supervisor any Incident he/she has observed or otherwise identified.'"  (Def. 56.1 ¶ 37 (quoting McKeon Decl. Ex. 1, Kingsbrook Incident Reporting Policy); *see also* McKeon Decl. ¶ 11.)  Plaintiff claims that Defendant "never instructed or trained any of the security guards assigned to [the Clinic] to do a daily, weekly or monthly inventory of any of the equipment at the [C]linic," and that "Defendant never kept an inventory of the equipment."  (Pl. Opp'n 1.)  Plaintiff also claims that Defendant's security policies only required that security "monitor all packages that look unusual," unless there was a heightened security alert.  (Pl. Opp'n 2.)  Therefore, it was "left to the security guard's judgment as to what

packages should be checked; there was no clear directive as to the checking of packages." (Pl. Opp'n 2.)

### b. Gemma Moore

Plaintiff's mother, Gemma Moore, was employed by Kingsbrook as the Director of Nursing Services at Rutland Nursing Home, a different Kingsbrook facility. (Def. 56.1 ¶ 61; Pl. Dep. 59:7–17, 63:5–18.) According to Plaintiff, throughout Gemma Moore's employment at Kingsbrook, she "had a distinguished history of defending and speaking out in opposition on behalf of other African American employees at Kingsbrook who were subjected to discrimination by Kingsbrook, including but not limited to a claim filed with the EEOC by [another employee]." (App. A ¶ 9.)

Plaintiff claims that, following a diversity training hosted by Kingsbrook in or about May 2009, Gemma Moore asked the attorney who conducted the diversity training lecture whether "a claim of racism was actionable against a company that put white people into the highest positions of power, such as Vice President or Assistant Vice President, while at the same time excluding more qualified African American employees from those positions." (*Id.* ¶ 10.) Plaintiff alleges that Earnest Liggins, Kingsbrook Human Resources Manager, overheard Gemma Moore's conversation with the attorney. (*Id.* ¶ 11.) According to Plaintiff, Rutland Nursing Home, Kingsbrook and KHS had one common Human Resources Department. (Pl. Opp'n 3.) Plaintiff asserts that KHS retaliated against him by terminating his employment because of this question by his mother. (*Id.* at 7–8.)

### c. Stolen Equipment

On or about June 5, 2009, optical equipment worth approximately $20,000 was discovered missing from the Clinic. (Def. 56.1 ¶ 41; Pl. Dep. 154:2–8.) The optical equipment

was last seen at the Clinic in April or May of 2009 by Peter Scaminaci, Kingsbrook's Assistant Vice President of Clinical Operations. (Def. 56.1 ¶ 45; McKeon Decl. ¶¶ 6–7; Pl. Opp'n 2–3.) The size and weight of the missing optical equipment "was such that it could not have been easily concealed by someone leaving the Clinic." (Def. 56.1 ¶ 42.) The Director of KHS, Joseph Culbert, was notified of the missing equipment on or about June 5, 2009. (Culbert Decl. ¶ 9.) KHS and Kingsbrook conducted an investigation regarding the missing optical equipment. (Def. 56.1 ¶ 46; Pl. Dep. 155:19–157:17, 161:6–12.)

### d. Investigation

On or about June 19, 2009, John McKeon, the Vice President of Human Resources for Kingsbrook, interviewed Clinic Director, Patricia Haynes, regarding the missing equipment. (McKeon Decl. ¶ 8.) Haynes noticed that the equipment was missing in mid-May 2009, but did not report the missing equipment to her supervisor or anyone else in management at Kingsbrook. (*Id*. ¶ 9.) Haynes questioned Plaintiff about the equipment at the time she noticed it was missing and Plaintiff told her he "did not know its whereabouts." (*Id*. ¶ 10.) Culbert was concerned that Plaintiff had been made aware of the missing equipment but did not report it to KHS. (Culbert Decl. ¶ 13.)

According to Plaintiff, Haynes had not told him that the equipment was missing, and he was not aware of the missing equipment until he was told by Culbert. (Pl. Dep. 154:20–157:21; Pl. Opp'n 2–3; Docket Entry No. 30, September 10, 2012 Letter from Plaintiff ("Pl. PMC Response") 2.) He did not fail to report the missing equipment since "he did not know that the equipment was missing because no system was put in place to make the security guards knowledgeable of every piece of equipment that was present in the clinic." (Pl. Opp'n 3.)

On or about June 22, 2009, Culbert and KHS Assistant Director Richard Perkins conducted interviews of the three security guards employed at the Clinic — Plaintiff, Allen and Douglas. (Def. 56.1 ¶¶ 51–53.) According to Plaintiff, he told Culbert and Perkins that he had no knowledge of the missing equipment. (Pl. Opp'n 4.) Plaintiff remembered seeing the equipment in the optical treatment room, but he had not been in the room for some time. (Culbert Decl. Ex. 2 ("KHS Investigation Memorandum") at 1.)

According to the KHS Investigation Memorandum that was prepared as a result of the investigation, when Plaintiff was specifically asked whether he had heard anyone talking about the equipment, he stated that several weeks prior, Haynes had approached him and inquired as to whether he had seen anyone remove the equipment. (*Id*.) Plaintiff stated that he did not remember the exact date of his conversation with Haynes and that he did not notify anyone about the missing equipment because he did not believe it was important.[3] (*Id*.) Plaintiff also told Culbert and Perkins that he did not make regular rounds of the Clinic and did not check large bags or packages leaving the Clinic. (*Id*.) He assisted Haynes by performing non-security related duties, such as answering telephone calls to the Clinic, unlike Allen and Douglas, both of whom refused Haynes's request to perform non-security related duties without supervisor permission, and both of whom searched large bags leaving the facility. (*Id*. at 1–3.)

Following the investigation, Culbert concluded that Plaintiff "failed to observe certain basic security protocols by," among other things, "(i) failing to adhere to the practice of inspecting large bags and packages being removed from the Clinic; and (ii) failing to promptly report the missing equipment to his supervisors at the time Ms. Haynes first told him about it."

---

[3] Plaintiff disputes this allegation as a "blatant untruth, because as a security guard, the first thing one would report when it comes to his or her knowledge is missing items." (Pl. Opp'n 5.)

(Culbert Decl. ¶ 15.) Culbert concluded that Plaintiff's "neglect to follow appropriate security protocols could have directly contributed to the theft of the equipment, since his failure to inspect large packages could have allowed someone to remove the equipment undetected, and his delay in reporting the incident may have diminished the likelihood of recovering the equipment." (*Id*.) Culbert was also concerned about Plaintiff's attitude during the interview, as Plaintiff "appeared detached and nonchalant, seemed unconcerned that thousands of dollars' worth of property had been stolen from the facility he was responsible for safeguarding, and refused to acknowledge any accountability whatsoever for the loss of property." (*Id*. ¶ 16.)

Plaintiff disputes Defendant's characterization of his behavior during the interview. According to Plaintiff, during the interview he was in shock that Culbert "practically accused" him of "stealing equipment that he knew nothing about," and therefore he was "unable to respond fluently" to Culbert's questions. (Pl. Opp'n 4.) Culbert was "intimidating," but "Plaintiff was never disrespectful toward Mr. Culbert or Mr. Richard Perkins during their interrogation of him." (*Id*.) Plaintiff also notes that despite his request, Defendant has failed to produce copies of all interview records and, therefore, there is no accurate summary of the investigation of the missing equipment that led to Plaintiff's termination. (*Id.*)

### e. Plaintiff's Termination

On July 9, 2009, Culbert informed Plaintiff that he was being discharged effective immediately and provided him with written notice. (Culbert Decl. ¶ 18.) Kingsbrook terminated Haynes the same day. (*Id*.) During his deposition, Plaintiff testified that he believed Culbert, Perkins and Roan McFarlane, Security Department Manager of KHS, made the decision to terminate him, and that he did not know of anyone else who was involved in the decision. (Pl. Dep. 186:15–187:7; Culbert Decl. ¶ 3.) Culbert stated in his declaration that he made the

decision to discharge Plaintiff, and that McFarlane and Perkins concurred with his decision. (Culbert Decl. ¶¶ 3, 20.) Both Perkins and McFarlane are African-American and of West Indian origin. (*Id.* ¶¶ 3, 5–6.)[4]

Following Plaintiff's termination, his shifts were assigned to Allen and Douglas. (*Id.* ¶ 19.) Plaintiff asserts that he was wrongfully terminated due to his race and national origin, and in retaliation for his mother's inquiry at the training session. (Pl. Opp'n 1, 5, 7–8.) Plaintiff filed an EEOC charge against Kingsbrook on April 2, 2010, and received a right to sue letter on April 27, 2011. (EEOC Charge of Discrimination attached to Compl.; Dismissal and Notice of Rights attached to Compl.)

## II.  Discussion

### a.  Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Kwong v. Bloomberg*, No. 12-CV-1578, 2013 WL 3388446, at *4 (2d Cir. July 9, 2013); *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when

---

[4] Plaintiff for the first time in his opposition to Defendant's summary judgment motion asserts that Culbert and McKeon were responsible for his termination, and that Perkins was merely a "pawn in the investigation" and was not involved in the discharge decision. (Pl. Opp'n 6–7.) There is no evidence, however, that McKeon was involved in the decision to terminate Plaintiff. To the contrary, the evidence before the Court is a declaration from McKeon that he was "advised" of Plaintiff's termination after it had already occurred. (McKeon Decl. ¶ 15.)

there is sufficient "evidence on which the jury could reasonably find for the plaintiff."

*Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to

defeat summary judgment; "there must be evidence on which the jury could reasonably find for

the plaintiff."  *Id.*  The court's function is to decide "whether, after resolving all ambiguities and

drawing all inferences in favor of the non-moving party, a rational juror could find in favor of

that party."  *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).  The Second Circuit has

"cautioned that '[w]here an employer acted with discriminatory intent, direct evidence of that

intent will only rarely be available, so affidavits and depositions must be carefully scrutinized for

circumstantial proof which, if believed, would show discrimination.'"  *Taddeo v. L.M. Berry &*

*Co.*, No. 12-CV-3591, 2013 WL 1943274, at *1 (2d Cir. May 13, 2013) (quoting *Gorzynski v.*

*JetBlue Airways Corp.*, 596 F .3d 93, 101 (2d Cir. 2010)).

### b.  Plaintiff's Racial and National Origin Discrimination Claim

Plaintiff alleges that he was terminated due to his race and national origin.  Title VII

prohibits an employer from discharging or discriminating "against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of such individual's

race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  Thus, "[a]n

employment decision . . . violates Title VII when it is 'based in whole or in part on

discrimination.'"  *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008) (quoting *Feingold*

*v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).

Title VII claims are assessed using the burden-shifting framework established by

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See e.g.*, *St. Mary's Honor Ctr. v.*

*Hicks*, 509 U.S. 502, 506 (1993); *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253–55

(1981); *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (race claims are subject to

burden shifting); *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010) (national origin claims are subject to burden shifting). Under the framework, a plaintiff must first establish a prima facie case of discrimination. *Hicks*, 509 U.S. at 506; *see also Ruiz*, 609 F.3d at 491–92. A plaintiff's burden at this stage is "minimal." *Holcomb*, 521 F.3d at 139 (quoting *Hicks*, 509 U.S. at 506). If the plaintiff satisfies this initial burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Hicks*, 509 U.S. at 506–07; *Ruiz*, 609 F.3d at 492. Defendant's burden "is not a particularly steep hurdle." *Hyek v. Field Support Servs.*, 702 F. Supp. 2d 84, 93 (E.D.N.Y. 2010). It "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 509)). If the defendant offers a legitimate, nondiscriminatory explanation for its action, summary judgment must still be denied, however, if plaintiff can show that "the evidence in plaintiff's favor, when viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that [his] dismissal was motivated at least in part by [race] discrimination." *Adamczyk v. N.Y. Dep't of Corr. Servs.*, 474 F. App'x 23, 25 (2d Cir. 2012) (alterations in original) (quoting *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 114 (2d Cir. 2007)).

### i. Prima Facie Case

In order to establish a prima facie case of employment discrimination under Title VII, a plaintiff must show that: (1) he belongs to a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) "the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown*, 673 F.3d at 150 (quoting *Holcomb*, 521 F.3d at 138); *see Ruiz*, 609 F.3d at 491–92. Defendant does not dispute the first three elements of Plaintiff's prima facie case. Plaintiff is

African-American and is from Trinidad and Tobago, thus he is a member of two protected classes, race and national origin, satisfying the first element. *Smith v. City of New York*, No. 12-CV-3250, 2013 WL 1903856, at *3 (S.D.N.Y. May 8, 2013) (plaintiff adequately pled "membership in a protected class based on national origin" as a "West Indian" of Jamaican descent); *Augustin v. Enlarged City Sch. Dist. of Newburgh*, 616 F. Supp. 2d 422, 439 (S.D.N.Y. 2009) ("There is no dispute that plaintiff, who is Haitian, belongs to a protected class."); *Robinson v. Keyspan*, No. 03-CV-4796, 2005 WL 3006687, at *4 (E.D.N.Y. Nov. 9, 2005) (plaintiff who was "black and of Guyanese national origin" was part of a protected class for both race and national origin); *Halstead v. N.Y.C. Transit Auth.*, No. 99-CV-03450, 2002 WL 34438897, at *67 (E.D.N.Y. Dec. 30, 2002) (as a West Indian, the plaintiff satisfied the national origin class), *aff'd*, 78 F. App'x 750 (2d Cir. 2003). Defendant does not dispute that Plaintiff was qualified to be a security guard, satisfying the second element. Plaintiff was terminated on July 9, 2009, which constitutes an adverse employment action, satisfying the third element. *See Gladwin v. Pozzi*, 403 F. App'x 603, 606 (2d Cir. 2010) (an African-American woman who was terminated from her job satisfied the first and third elements of her prima facie case); *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (discharge, refusal to promote, and reprimands are adverse employment actions). However, while Plaintiff satisfies the first three elements, and despite construing the evidence in the light most favorable to Plaintiff, Plaintiff cannot show that his termination occurred under circumstances giving rise to any inference of racial or national origin discriminatory intent and, therefore, cannot satisfy the final element necessary to establish a prima facie case of race or national origin discrimination.

Inference of discrimination "is a 'flexible [standard] that can be satisfied differently in differing factual scenarios." *Howard v. MTA Metro-N. Commuter R.R.*, 866 F. Supp. 2d 196,

204 (S.D.N.Y. 2011) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir.

1996)). "No one particular type of proof is required to show that Plaintiff's termination occurred

under circumstances giving rise to an inference of discrimination." *Ofoedu v. St. Francis Hosp.*

*& Med. Ctr.*, No. 04-CV-1707, 2006 WL 2642415, at *14 (D. Conn. Sept. 13, 2006). An

inference of discrimination can be drawn from circumstances such as:

> the employer's continuing, after discharging the plaintiff, to seek
> applicants from persons of the plaintiff's qualifications to fill that
> position; or the employer's criticism of the plaintiff's performance
> in ethnically degrading terms; or its invidious comments about
> others in the employee's protected group; or the more favorable
> treatment of employees not in the protected group; or the sequence
> of events leading to the plaintiff's discharge.

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) (quoting *Chambers v.*

*TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)); *see Russell v. Cnty. of Nassau*, 696 F.

Supp. 2d 213, 232 (E.D.N.Y. 2010) ("A Title VII plaintiff may establish an inference of

discriminatory intent in a number of different ways depending on the specific facts of the case.

For example, a discriminatory race and/or color motive can be inferred if a plaintiff was treated

differently than similarly situated white employees or if the defendants engaged in a pattern of

discriminatory treatment of African-American employees." (citing *Abdu-Brisson*, 239 F.3d at

468; *Johnson v. Cnty. Of Nassau*, 480 F. Supp. 2d 581, 597 (E.D.N.Y. 2007))). However, a

plaintiff's "mere subjective belief that he was discriminated against because of his race does not

sustain a race discrimination claim.'" *Gue v. Suleiman*, No. 10-CV-8958, 2012 WL 4473283, at

*8 (S.D.N.Y. Sept. 27, 2012) (quoting *Baptiste v. Cushman & Wakefield*, No. 03-CV-2102, 2007

WL 747796, at *7 (S.D.N.Y. Mar. 7, 2007)); *see also Karim-Seidou v. Hosp. of St. Raphael*, No.

09-CV-51, 2012 WL 6628886, at *5 (D. Conn. Dec. 19, 2012) (the plaintiff's "own subjective

beliefs" that he was discriminated against based on national origin and race were insufficient to

survive summary judgment); *Ogindo v. DeFleur*, No. 07-CV-1322, 2010 WL 410374, at *7

(N.D.N.Y. Jan. 27, 2010) ("Plaintiff's subjective beliefs and unsubstantiated allegations of unlawful motive aside, there is insufficient evidence tending to suggest that Plaintiff's pursuit of his doctoral degree was inhibited because of his race or national origin."); *Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 463–64 (W.D.N.Y. 2009) (the plaintiff's "subjective beliefs, and naked allegations, unsupported by any facts" were insufficient to support a discrimination claim based on national origin), *aff'd*, 392 F. App'x 887 (2d Cir. 2010).

Plaintiff's evidence of racial and national origin discrimination is that (1) he was unfairly held responsible for the missing equipment, and (2) the two individuals who were terminated in connection with the missing equipment were from Trinidad and Tobago.[5] (Pl. Opp'n 5–7.) Plaintiff has not offered any evidence from which a jury could reasonably find that Plaintiff was the subject of racial or national origin discrimination. Plaintiff has pointed to no allegations that *anyone* made either ethnic or racist comments to or about him regarding his race or national origin, or that others not in either his race or national origin class were treated more favorably than Plaintiff. *See Tucker v. New York City*, No. 05-CV-2804, 2008 WL 4450271, at *5 (S.D.N.Y. Sept. 30, 2008) (holding that plaintiff offered no evidence that would permit reasonable jurors to find that his employer's actions were motivated by racial animus where, among other things, he did "not contend that anyone . . . treated him in a racially disparaging manner or showed any sign of racial bias or hostility"), *aff'd*, 376 F. App'x 100 (2d Cir. 2010).

### 1. Unfair Treatment

Plaintiff appears to challenge the factual basis for his termination and argues that it was unfair to terminate him under the circumstances. Plaintiff argues that because he was never

---

[5] Plaintiff also argues that the termination decision was made by McKeon and Culbert, two Caucasian supervisors. However, this assertion is not supported by the evidence in the record. *See supra* note 4.

instructed or trained to perform a regular inventory of any of the equipment in the Clinic, never told what pieces of equipment were in the Clinic, and because there was no clear directive regarding the checking of packages leaving the Clinic, he should not be held responsible for the missing equipment. (Pl. Opp'n 1–3.) Nowhere in these complaints does Plaintiff allege that the lack of training and direction was based on his race or national origin. Only that Kingsbrook, or KHS, failed to properly train him, inform him of the equipment at the Clinic or direct him as to how to check packages leaving the Clinic.

Construing the facts in the light most favorable to Plaintiff and accepting Plaintiff's allegations that he was not properly trained, never told what pieces of equipment were at the Clinic and was never given instructions as to which packages leaving the Clinic should be checked, there is still no evidence from which a jury could reasonably find that Plaintiff was terminated because of discrimination based on his race or national origin. Plaintiff has not presented any evidence that the reason Kingsbrook or KHS failed to properly train Plaintiff, identify existing equipment at the Clinic or give a directive to Plaintiff as to which packages to search, was as a result of Plaintiff's race or national origin. That is, that Kingsbrook or KHS provided training, identified the equipment at the Clinic and gave directives to other security guards but not to Plaintiff or other guards that are of the same race or national origin as Plaintiff. Indeed, Plaintiff argues to the contrary, that Kingsbrook *never trained any of the security guards*. (Pl. Opp'n 1.) While Plaintiff may argue that it was unfair for Kingsbrook to terminate his employment under the circumstances, because Plaintiff cannot show that the basis for the "unfairness" was discriminatory, Plaintiff cannot establish that his termination "occurred under circumstances giving rise to an inference of discriminatory intent." *See Gue v. Suleiman*, No. 10-CV-8958, 2012 WL 4473283, at *8 (S.D.N.Y. Sept. 27, 2012) ("[U]nfairness in the

workplace that is not the result of discrimination against a protected characteristic is simply not actionable." (quoting *Nakis v. Potter*, No. 01-CV-10047, 2004 WL 2903718, at \*20 (S.D.N.Y. Dec. 15, 2004))); *Williams v. City of Rochester*, No. 08-CV-6063, 2010 WL 986484, at \*5 (W.D.N.Y. Mar. 17, 2010) (same); *McCowan v. HSBC Bank USA, N.A.*, 689 F. Supp. 2d 390, 416 (E.D.N.Y. 2010) (same).

Plaintiff also argues that Kingsbrook and KHS erroneously concluded that he knew about the missing equipment and failed to report it to his supervisor, thereby making his termination unlawful. (Pl. Opp'n 2–3.) However, "[p]ersonnel decisions that are based on subjective factors or that are incorrect do not support a federal claim unless they are tainted, at least in part, by illegal discrimination." *Nakis*, 2004 WL 2903718, at \*20 (citing *Bussa v. Alitalia Linee Aeree Italiane, S.P.A.*, No. 02-CV-10296, 2004 WL 1637014, at \*6, \*9 (S.D.N.Y. July 21, 2004)); *see Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 518 (S.D.N.Y. 2012) ("The employer could terminate the plaintiff for a good reason, a bad reason, or no reason at all, so long as it was not a discriminatory reason. . . . Moreover, it is not for the Court to second-guess the business judgment for a termination, so long as there is no evidence that the reason for the decision was a pretext for discrimination." (quoting *Slatky v. Healthfirst, Inc.,* No. 02-CV-5182, 2003 WL 22705123, at \*5 (S.D.N.Y. Nov. 17, 2003))); *Robinson v. Zurich N. Am. Ins. Co.*, 892 F. Supp. 2d 409, 431 (E.D.N.Y. 2012) ("An 'employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" (quoting *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984))). Therefore, even assuming as Plaintiff argues that Kingsbrook or KHS unfairly held him responsible for the missing equipment, or incorrectly concluded that he was responsible for and held him responsible for not reporting that the equipment was missing when

he did not know it was missing, such unfair or mistaken treatment alone is not enough to support an inference of discrimination.

## 2. Individuals Similarly Situated

Plaintiff also appears to argue that he was treated differently from others similarly situated because of his national origin.[6]  Specifically, Plaintiff alleges that Allen and Douglas, the other two security guards at the Clinic with equal access to the equipment, were not from Trinidad and Tobago and were not terminated.  (Pl. Opp'n 6–7.)  Plaintiff points to the fact that the only two people terminated in connection with the missing equipment, himself and Haynes — the Director of the Clinic — were both from Trinidad and Tobago, implying that the real reason they were terminated is because of their national origin.[7]  (*Id*. at 6.)  An inference of discrimination can be raised by "showing that an employer treated [an employee] less favorably than a similarly situated employee outside his protected group."  *Abdul-Hakeem v. Parkinson*, No. 12-CV-748, 2013 WL 3111300, at *1 (2d Cir. June 21, 2013) (summary order) (quoting *Ruiz*, 609 F.3d at 493); *see also Shlafer v. Wackenhut Corp.*, 837 F. Supp. 2d 20, 25 (D. Conn. 2011) ("Plaintiff must set forth factual circumstances from which discriminatory motivation may be inferred.  Discriminatory motivation may be established by allegations of preferential treatment given to similarly situated individuals, or remarks conveying discriminatory animus." (citations omitted)); *Mabry v. Neighborhood Defender Serv*., 769 F. Supp. 2d 381, 392 (S.D.N.Y. 2011) ("Allegations supporting motive may include preferential treatment given to

---

[6]  Plaintiff's argument here does not appear to be based on his race, only his national origin.

[7]  Plaintiff points to the termination of Haynes, who he maintains is also from Trinidad and Tobago, in support of his claim that he was discriminated against because of his national origin, but Plaintiff has provided no evidence to support his claim that the termination of Haynes was discriminatory.  Moreover, Plaintiff testified during his deposition that he did not even recall Haynes' national origin.  (Tr. 147:13–148:3.)

similarly situated individuals or remarks that convey discriminatory animus."). Such a showing "is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." *Ruiz*, 609 F.3d at 493 (internal quotation marks omitted). "The 'standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases,' such that 'the comparator must be similarly situated to the plaintiff in all material respects.'" *Abdul-Hakeem*, 2013 WL 3111300, at *1 (quoting *Ruiz*, 609 F.3d at 494); *see also Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005) ("Under Second Circuit law, where a plaintiff seeks to make out a case of discrimination 'by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that [ ]he shared sufficient employment characteristics with that comparator so that they could be considered similarly situated.'" (alteration in original) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997))).

"An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Abdul-Hakeem*, 2013 WL 3111300, at *1 (quoting *Ruiz*, 609 F.3d at 493–94 (internal quotation marks omitted)); *see also Graham v. Long Island R.R.*, 230 F.3d 34, 39–40 (2d Cir. 2000) ("We have said that to satisfy *Shumway's* 'all material respects' standard for being similarly situated, a plaintiff must show that her co-employees were subject to the same performance evaluation and discipline standards. In addition, the standard we used in *Shumway* requires plaintiff to show that similarly situated employees who went undisciplined engaged in comparable conduct." (citations omitted)). "Ordinarily, whether other employees are similarly situated is a factual issue that should be submitted to a jury, but '[t]his rule is not absolute . . . and a court can properly grant summary judgment where it is clear that no reasonable jury could find the

similarly situated prong met.'" *Sweeney v. Leone*, No. 05-CV-871, 2006 WL 2246372, at *13

(D. Conn. July 31, 2006) (quoting *Harlen Associates v. Inc. Vill. of Mineola*, 273 F.3d 494, 499

n.2 (2d Cir. 2001)); *see also Lugo v. City of New York*, No. 12-CV-3565, 2013 WL 1811271, at

*2 (2d Cir. May 1, 2013) (the plaintiff had not provided "any information from which a

reasonable jury could conclude that the officers referenced were similarly situated to" the

plaintiff).

Plaintiff has not shown that Allen and Douglas were similarly situated to him.  Plaintiff

was the only guard who worked four days a week and had primary responsibility for the security

of the Clinic where the equipment went missing.  (Pl. Dep. 95:5–96:11, 97:4–98:15, 131:11–24,

132:1–7, 134:13–20.)  Allen worked one day each week and Douglas worked as a "floating"

security guard when needed.  *See Payne v. Huntington Union Free Sch. Dist.*, 219 F. Supp. 2d

273, 281 (E.D.N.Y. 2002) (because "[i]t is often the case, for varied reasons, that temporary or

part-time employees are treated differently than full-time or permanent employees," any

similarly-situated group must be comprised of employees of the same employment level as

plaintiff).  In addition, unlike Allen and Douglas, both of whom followed security protocol,

Plaintiff admitted that he did not follow security protocol of inspecting large bags and packages

that were removed from the premises.  (Pl. Dep. 146:13–15, 170:9–14; Culbert Dec. ¶¶ 11, 13–

15, Ex. 2.)[8]  Based on these facts, Plaintiff, an employee who worked four of the five days the

Clinic is open and who admitted that he did not inspect all large packages, is not similarly

---

[8]  In addition, KHS was informed by Kingsbrook that the Clinic Director had told
Plaintiff about the missing equipment several weeks earlier, but Plaintiff did not report the
missing equipment to his supervisor.  (Culbert Decl. ¶¶ 12–13; *see also* McKeon Decl. ¶ 8.)
There was no evidence that either Allen or Douglas had such prior knowledge.  Plaintiff
maintains that he did not know about the missing equipment prior to being told by Culbert.  (Pl.
Dep. 154:20–157:21; Pl. Opp'n 2–3; Pl. PMC Response 2.)  However, even assuming that
Plaintiff did not know about the missing equipment in advance of being told by Culbert, Plaintiff
still fails to demonstrate that he is similarly situated to Allen and Douglas as discussed above.

situated to Allen who worked one day each week, or Douglas who worked only when necessary to cover for Plaintiff or Allen when either was unavailable, both of whom followed security protocol and inspected large packages. *Sweeney*, 2006 WL 2246372, at *13 (plaintiff-dispatcher who violated departmental policy regarding intercom usage, was not similarly situated to other employees where he "failed to produce evidence that other employees engaged in misconduct of comparable seriousness, or that defendants knew about and ignored other violations of the intercom policy"); *Bengard v. United Parcel Serv.*, No. 99-CV-8454, 2001 WL 1328551, at *10–11 (E.D.N.Y. Aug. 22, 2001) (plaintiff fired for dishonesty was not similarly situated to employees who had not violated the company's dishonesty policy), *aff'd*, 48 F. App'x 350 (2d Cir. 2002).

Even assuming, however, that Allen and Douglas were similarly situated to Plaintiff, Plaintiff's argument that his termination was a result of racial or national origin animus would be discredited because his alleged comparators, Allen and Douglas, are of the same race and national origin as Plaintiff and neither was terminated. Allen and Douglas are both African-Americans, both are of West Indian origin, and Douglas is from Trinidad and Tobago.[9] *See Turner v. Eastconn Reg'l Educ. Serv. Ctr.*, No. 12-CV-788, 2013 WL 1092907, at *8–9 (D. Conn. Mar. 15, 2013) (plaintiff's allegation that a member of her same protected class "received favorable treatment would undermine any inference that the [d]efendants were motivated by [discriminatory] animus"); *Henny v. New York State*, 842 F. Supp. 2d 530, 555 n.24 (S.D.N.Y. 2012) (plaintiff's argument that she was treated differently from other African-American employees undermined any inference that she was terminated based on discriminatory animus against African-Americans); *Sookdeo-Ruiz v. GCI Grp.*, No. 00-CV-3517, 2001 WL 121942, at

---

[9] There is no evidence before the Court that Defendant distinguished between individuals from various countries in the West Indies.

*4 (S.D.N.Y. Feb. 13, 2001) (plaintiff failed to establish her discrimination claim where she "failed to offer a shred of evidence that defendant had a discriminatory motive," and defendant offered evidence that other members of plaintiff's protected class suffered no adverse employment actions), *aff'd*, 31 F. App'x 17 (2d Cir. 2002); *Adeniji v. Admin. for Children Servs., NYC*, 43 F. Supp. 2d 407, 426 n. 7 (S.D.N.Y. 1999) (collecting cases in which plaintiffs failed to establish an inference of discrimination where they were treated less favorably than members of their own protected classes).

Moreover, the fact that Plaintiff was *replaced* by Allen and Douglas — both African-Americans of West Indian origin, Douglas from Trinidad and Tobago — undermines any inference of racial or national origin animus in Plaintiff's termination. *See, e.g. Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 117 (2d Cir. 2010) (the plaintiff failed to establish that the circumstances surrounding her termination gave rise to an inference of racial discrimination where plaintiff was replaced by another black female); *Gue v. Suleiman*, No. 10-CV-8958, 2012 WL 4473283, *8 (S.D.N.Y. Sept. 27, 2012) ("Any inference of racial discrimination was further undermined by the fact that [plaintiff] was replaced by a Black Haitian [employee], also in the same protected class as [plaintiff]."); *Pearson v. Lynch*, No. 10-CV-5119, 2012 WL 983546, at *8–9 (S.D.N.Y. Mar. 22, 2012) (the plaintiff who was replaced by two African-American employees failed to establish a prima facie case of racial discrimination because "[a]n inference of discriminatory intent does not exist when the plaintiff and his or her replacement are of the same protected category"); *Pearson v. The Unification Theological Seminary*, 785 F. Supp. 2d 141, 155 (S.D.N.Y. 2011) ("it is impossible for a reasonable jury to find that [defendant] took [an adverse employment action] as a result of [plaintiff's] race" when plaintiff was replaced by an individual who was also African–American); *Catanzaro v. City of New York*, No. 10-CV-

1825, 2011 WL 335648, at *5 (S.D.N.Y. Jan. 25, 2011) (any suggestion of discrimination in failing to hire plaintiff was "undermined by the fact that the individual hired was himself a member of the protected class"), *aff'd*, 486 F. App'x 899 (2d Cir. 2012); *DeJesus v. Dist. One Cmty. Educ. Council*, No. 08-CV-10666, 2010 WL 3959624, at *4 (S.D.N.Y. Sept. 14, 2010) ("The fact that plaintiff's immediate replacement is of the same protected classes effectively precludes plaintiff from establishing that her termination occurred under the requisite circumstances giving rise to an inference of discrimination"); *Fleming v. MaxMara USA, Inc.*, No. 06-CV-6357, 2010 WL 1629705, at *9 (E.D.N.Y. Apr. 21, 2010) (plaintiff's discrimination claim was "clearly meritless" where plaintiff was replaced by a member of her own protected class and failed to present "'other facts from which the inference' of discrimination could be drawn"); *Pilgrim v. McGraw-Hill Companies, Inc.*, 599 F. Supp. 2d 462, 480 (S.D.N.Y. 2009) ("Where no evidence giving rise to an inference of discrimination has been presented, the fact that a plaintiff is replaced with an individual within his protected class undermines his attempt to establish a prima facie case of discrimination." (quoting *Randolph v. CIBC World Mkts.*, No. 01-CV-11589, 2005 WL 704804, at *12 (S.D.N.Y. Mar. 29, 2005))).[10]

---

[10] Recognizing that his replacements are of the same racial group, Plaintiff argues instead that they are not the same national origin. (Pl. Opp'n 7.) Plaintiff does not dispute that Allen and Douglas are of West Indian origin. Plaintiff argues that they are not from his specific country of origin, Trinidad and Tobago, and, therefore, they are not the same national origin as Plaintiff. Plaintiff's argument is factually incorrect as to Douglas, and is not supported by the law. Defendant presented the sworn statement of Culbert, Director of Security at KHS, that Douglas, one of the two security guards who Plaintiff uses as a comparator and who replaced Plaintiff, is from Trinidad and Tobago, the same country as Plaintiff. (Culbert Decl. ¶ 6.) Indeed, Plaintiff admitted during his deposition and at oral argument that he does not know Douglas's country of origin. (Pl. Dep. 147:5–12.) There is no contradictory evidence from which a jury could reasonably find otherwise. Therefore, Plaintiff was replaced by someone of the same race and national origin class. In addition, many courts in this Circuit have recognized individuals of West Indian origin as being of the same national origin class. *See, e.g.*, *Robinson v. Gucci Am.*, No. 11-CV-3742, 2012 WL 259409, at *1 (S.D.N.Y. Jan. 27, 2012) (defining plaintiff's national origin as West Indian); *Lawson v. New York City Bd. of Educ.*, No.

### 3. Additional Considerations

Additional evidence in the record also demonstrates that Plaintiff cannot establish that discrimination played any role in his termination. The decision to terminate Plaintiff was made by Culbert with the consent of Perkins and McFarlane, both of whom are African-American and of West Indian origin.[11]  (Culbert Decl. ¶¶ 3, 5–6.)  Courts have recognized that an allegation that a decision is motivated by racial or national origin animus is weakened when the

---

09-CV-1335, 2011 WL 5346091, at *1–2 (S.D.N.Y. Aug. 30, 2011) (comparing treatment of West Indian individuals and individuals of other national origins), *report and recommendation adopted*, No. 09-CV-1335, 2011 WL 5346090 (S.D.N.Y. Nov. 4, 2011); *Cole v. Cent. Park Sys., Inc.*, No. 09-CV-3185, 2010 WL 3747591, at * 3 (E.D.N.Y. Sept. 20, 2010) (defining plaintiff's national origin as West Indian); *Matthias v. Ready Workers Mgmt. Corp.*, No. 08-CV-7245, 2009 WL 2985696, at *9 (S.D.N.Y. Sept. 18, 2009) (finding five other employees of West Indian background to be of the same national origin as plaintiff); *Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, No. 03-CV-6233, 2005 WL 1521239, at *1 (E.D.N.Y. June 22, 2005) (defining plaintiff's national origin as West Indian), *aff'd*, 205 F. App'x 858 (2d Cir. 2006); *Mark v. Brookdale Univ. Hosp.*, No. 04-CV-2497, 2005 WL 1521185, at *26 (E.D.N.Y. June 22, 2005) (comparing plaintiff's treatment to that of non-black or non-West Indian employees). Thus, even though Allen is not from Trinidad and Tobago but because he is from another country in the West Indies, arguably, Allen can be considered of the same national origin as Plaintiff. *But see Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 415 (E.D.N.Y. 2010) (distinguishing between plaintiff's Trinidadian national origin and her West Indian ethnicity). *See generally Shah v. Wilco Sys., Inc.*, No. 99-CV-12054, 2001 WL 1006722, at *3 (S.D.N.Y. Aug. 31, 2001) ("In *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973), the Supreme Court held that, in the context of Title VII, '[t]he term national origin on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came.' . . . the EEOC has adopted a broader definition, which prohibits ". . . the denial of equal employment opportunity because of an individual's, or his or her ancestor's place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group.'" (internal quotation marks omitted) (citation omitted)), *aff'd*, 76 F. App'x 383 (2d Cir. 2003).

[11]  Plaintiff's argument in his opposition to the motion that Culbert and McKeon, both of whom are Caucasian, were responsible for his termination is directly contradicted by his deposition testimony and must be disregarded. *See Lam v. Sephora USA Inc.*, 488 F. App'x 487, 490 (2d Cir. 2012) (district court did not err in concluding that plaintiff's statement that contradicted his prior deposition testimony did not "create a factual issue that was genuine"); *Jones v. N.Y.C. Health & Hosps. Corp.*, 102 F. App'x 223, 226 n.2 (2d Cir. 2004) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." (quoting *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987)); *Britt v. Merrill Lynch & Co., Inc.*, No. 08-CV-5356, 2011 WL 4000992, at *9 (S.D.N.Y. Aug. 26, 2011) (plaintiff's argument that directly contradicted her deposition testimony and was unsupported by the record did not create a factual dispute).

decisionmakers are members of the protected class as the plaintiff. *See, e.g.*, *Klings v. New York State Office of Court Admin.*, No. 04-CV-3400, 2010 WL 1292256, at *9 (E.D.N.Y. Apr. 5, 2010) (plaintiff failed to establish that defendant's decision to not promote her gave rise to an inference of discrimination where, among other things, supervisors who stated they would not have recommended plaintiff for promotion were of the same protected class as plaintiff); *Eder v. City of New York*, No. 06-CV-13013, 2009 WL 362706, at *8 (S.D.N.Y. Feb. 12, 2009) ("any inference of discrimination, without additional evidence, is not warranted," where plaintiff and plaintiff's "immediate supervisor who assessed [p]laintiff's performance and determined that it was lacking, are members of the same protected class"); *Tucker v. New York City*, No. 05-CV-2804, 2008 WL 4450271, at *5 (S.D.N.Y. Sept. 30, 2008) (any inference of race discrimination is undermined by the fact that plaintiff worked for several individuals who were also African-American), *aff'd*, 376 F. App'x 100 (2d Cir. 2010); *White v. N.Y.C. Dep't of Educ.*, No. 05-CV-2064, 2008 WL 4507614, *6 (E.D.N.Y. Sept. 30, 2008) (the fact that the denial of additional resources came from plaintiff's own African-American supervisor, a female teacher in the same protected class as plaintiff, rendered plaintiff's "speculative and conclusory claims of racial, ethnic or gender prejudice even less plausible"); *Fosen v. N.Y. Times*, No. 03-CV-3785, 2006 WL 2927611, at *5 (S.D.N.Y. Oct.11, 2006) (any inference of discrimination was "critically undermined" by the fact that the decisionmakers belonged to the same protected class as did the plaintiff; *Connell v. Consol. Edison Co.*, 109 F. Supp. 2d 202, 210 (S.D.N.Y. 2000) (plaintiff failed to demonstrate discrimination where decisionmakers were members of the same protected class (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991))).

In addition, Plaintiff was hired by the same individual who played a role in his termination and therefore, Plaintiff's claim that his termination was a result of racial and national

origin animus is even further undermined. Plaintiff was hired by Perkins, and Perkins was one of the two individuals who concurred in the decision to terminate Plaintiff. *See Filozof v. Monroe Cmty. Coll.*, 411 F. App'x 423, 427 (2d Cir. 2011) ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." (quoting *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d Cir. 1997))); *Mastrolillo v. Conn.*, 352 F. App'x 472, 474 (2d Cir. 2009) (plaintiff failed to establish an inference of discrimination because "she submitted no evidence indicating that she was treated differently than men or that men were given preferential treatment," and, "[m]oreover, the decision not to renew her contract was made by the same individual who initially recommended that the college consider her for the teaching position"); *Kaplan v. Beth Israel Med. Ctr.*, No. 07-CV-8842, 2010 WL 1253967, at *5 (S.D.N.Y. Mar. 31, 2010) (the "same actor doctrine" negated any inference of age discrimination where the same individual who hired the plaintiff was also one of the two individuals involved in the plaintiff's termination).

Moreover, KHS continued to hire and employ individuals of West Indian Origin, further undermining Plaintiff's claim. (*See* Culbert Dec. ¶¶ 3, 6.) KHS's workforce is over 90% African-American, and a large proportion of KHS's African-American employees are of West Indian origin. (*Id.*) *See Wynn v. N.Y., Office of Children & Family Servs.*, 506 F. Supp. 2d 215, 220 (W.D.N.Y. 2007) (plaintiff failed to establish an inference of racial discrimination where sixty percent of defendant's employees were African-American and there was no evidence that other African-American employees were receiving unsatisfactory annual performance reviews or suspensions); *Johnson v. N.Y.C. Board of Educ.*, No. 96-CV-4472, 2000 WL 1739308, at *6–7 (E.D.N.Y. 2000) (dismissing plaintiff's age and race-related discrimination claims based on "an

excessively monitored environment" because plaintiff failed to offer any evidence that her employer's activity was motivated by illegal discrimination, did not allege any "instance of race or age-based animosity," such as "remarks, gestures, or innuendoes based on race or age," and the racial demographics of the workplace, which included a number of other African-American employees, all of whom were receiving satisfactory evaluations, did not imply discrimination). Plaintiff does not dispute that many of KHS's security guards are of West Indian origin. Plaintiff argues instead that they are not from Trinidad and Tobago and are therefore of a different national origin. Even if true, Plaintiff has presented no evidence from which a jury could reasonably conclude that Plaintiff's termination was as a result of discrimination because of Plaintiff's national origin as someone from Trinidad and Tobago, especially where, as here, one of Plaintiff's replacements is from Trinidad and Tobago.

Plaintiff has failed to establish a prima facie case of discrimination based on race or national origin.

### ii. Pretext

Even assuming that Plaintiff could establish a prima facie case, Plaintiff cannot meet his burden of establishing pretext and his claim would nevertheless fail for this reason. Defendant presented evidence that Plaintiff was terminated because he was the full-time security guard responsible for the Clinic, failed to follow proper security procedures, failed to report the loss of the equipment and was "detached and nonchalant" during the investigative interview. (Culbert Decl. ¶ 15–16; KHS Investigation Memorandum 1–3.) These are legitimate reasons for Plaintiff's termination, even if Defendant was erroneous in reaching its conclusion. *See Miller v. Nat'l Assoc. of Sec. Dealers, Inc.*, 703 F. Supp. 2d 230, 247 (E.D.N.Y. 2010) ("The relevant inquiry is not whether the performance-based justification for plaintiff's termination articulated

by defendant is accurate or fair, but whether plaintiff can show any evidence that it was not the actual justification. Plaintiff cannot accomplish this by stating his disagreement with his supervisors' negative assessment of his performance, even [if he] has evidence that the decision was objectively incorrect.'" (alteration in original) (citations and internal quotations marks omitted)); *Oliveras v. Wilkins*, No. 06-CV-3578, 2012 WL 3245494, at *14 (S.D.N.Y. June 26, 2012) (holding that even if employer's conclusion that plaintiff was responsible for an argument was in error, "that error in and of itself would not allow one to infer a gender-based discriminatory motive underlying the decision to terminate plaintiff"), *report and recommendation adopted*, No. 06-CV-3578, 2012 WL 3245493 (S.D.N.Y. Aug. 3, 2012); *Coltin v. Corp. for Justice Mgmt., Inc.*, 542 F. Supp. 2d 197, 205 (D. Conn. 2008) (finding that, even if decisionmaker was incorrect in her understanding and implementation of defendant's policies, or even if plaintiff implicitly had permission to engage in the allegedly improper conduct, there was no evidence that wrongful discrimination played a role in plaintiff's termination); *Sharpe v. Utica Mut. Ins. Co.*, 756 F. Supp. 2d 230, 250 (N.D.N.Y. 2010) ("[T]he fact that an employee disagrees with the results of an employer's decision regarding termination, or even has evidence that the decision was objectively incorrect or was based on faulty investigation, does not automatically demonstrate, by itself, that the employer's proffered reasons are a pretext for termination." (citing *Rodriguez v. City of New York*, 644 F.Supp.2d 168, 187 (E.D.N.Y. 2008))); *Randall v. Potter*, No. 01-CV-2097, 2004 WL 439491, at *5 (S.D.N.Y. Mar. 9, 2004) (finding that even if defendant-employer terminated plaintiff based on an incorrect belief that plaintiff had engaged in improper conduct, that belief did not establish an inference of discrimination); *Williams v. McCauseland*, No. 90-CV-7563, 1995 WL 548862, at * 13 (S.D.N.Y. Sept. 15,

1995) (explaining that failure to fulfill job responsibilities is a legitimate reason for termination and granting employer's motion for summary judgment).

To avoid summary judgment, Plaintiff must offer evidence from which a reasonable jury could conclude by a preponderance of the evidence that racial or national origin discrimination played a role in the adverse action taken by Defendant. *See Holcomb*, 521 F.3d at 141. A "plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Id.* at 138 (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995)); *see also Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. ---, ---, 133 S.Ct. 2517, 2526 (June 24, 2013); *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013). Plaintiff asserts only factual challenges to Defendant's determinations which led to his termination — he was never trained about proper security procedures, did not know about the missing equipment and therefore did not fail to report it, and was surprised at being attacked during the interview but was not detached and nonchalant. He states that since these reasons offered by Defendant are untrue, they were made simply to mask Defendant's discriminatory intent. However, the fact that an employee "disagrees with an employer's evaluation of that employee's misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination." *Grant v. Roche Diagnostics Corp.,* No. 09-CV-1540, 2011 WL 3040913, at *11 (E.D.N.Y. July 20, 2011) (quoting *Kalra v. HSBC Bank USA, N.A.*, 567 F. Supp. 2d 385, 397 (E.D.N.Y. 2008)); *see also Fleming*, 371 F. App'x at 117–18 (plaintiff's disagreement with her employer over whether her behavior was inappropriate was not enough to allow a rational factfinder to find that defendants' proffered

reasons for plaintiff's termination were pretextual); *Soderberg v. Gunther Int'l, Inc.*, 124 F. App'x 30, 32 (2d Cir. 2005) ("[I]t is not the function of a fact-finder to second-guess business decisions regarding what constitutes satisfactory work performance." (internal quotation marks omitted)); *McNamee v. Starbucks Coffee Co.*, No. 10-CV-6508, 2012 WL 6628879, at *8 (W.D.N.Y. Dec. 19, 2012) ("Where the employer's proffered reason is that the employee's job performance was unsatisfactory, the employee's opinion to the contrary, by itself, is insufficient to raise a triable issue of fact as to pretext.").

Even if the decisions made by Defendant were incorrect and Plaintiff had presented evidence such that a jury "could conclude that [D]efendant['s] stated reasons for firing [P]laintiff were pretextual," summary judgment is still appropriate where, as here, "[P]laintiff has not demonstrated that the asserted pretextual reasons were intended to mask . . . discrimination." *Schnabel v. Abramson*, 232 F.3d 83, 88 (2d Cir. 2000); *see also Kennedy v. Related Mgmt.*, 403 F. App'x 566, 568 (2d Cir. 2010) ("[E]ven if we were to assume that [defendant's] asserted reason [for rejecting plaintiffs' application] was pretextual, there is no evidence in the record from which a reasonable jury could find that it was a pretext to hide a discriminatory motive."); *Singh v. Air India Ltd.*, 108 F. App'x 9, 10 (2d Cir. 2004) (affirming dismissal of plaintiff's discrimination claim because, even if the evidence "did demonstrate pretext," plaintiff failed to "present evidence that would permit a rational jury to conclude that this was a pretext for age discrimination").

Plaintiff simply has not presented any evidence from which a jury could reasonably infer that Plaintiff's termination occurred under circumstances that gave rise to any inference of discriminatory intent. Plaintiff cannot establish that discrimination played any role in his termination because, among other things, Plaintiff was not similarly situated to Allen and

Douglas, Allen and Douglas are of the same race and national origin as Plaintiff and Plaintiff was replaced by Allen and Douglas.  Moreover, the decision to terminate Plaintiff was made with the consent of two decisionmakers of Plaintiff's same race and national origin, Plaintiff was hired by one of the individuals who played a role in his termination, and Defendant continued to hire and employ individuals of West Indian origin.  Plaintiff therefore cannot establish discrimination based on his race or national origin.  Defendant's motion for summary judgment as to Plaintiff's claim of racial and national origin discrimination is granted.

### c.  Plaintiff's Retaliation Claim

Plaintiff claims that he was terminated in retaliation for his mother Gemma Moore's "protected activity" — allegedly asking a question at a Kingsbrook diversity training session in May 2009 regarding "whether a claim of racism was actionable against a company that put white people into the highest positions of power . . . while at the same time excluding more qualified African American employees from those power positions."  (App. A ¶ 10.)  Plaintiff alleges that his mother "had a distinguished history of defending and speaking out on behalf of other African American employees at Kingsbrook who were subjected to discrimination by Kingsbrook."  (App. A ¶ 9.)  For the reasons discussed below, Plaintiff has failed to establish that Defendant fired him in retaliation for his mother's action.

Claims of retaliation for engaging in protected conduct under Title VII are examined under the *McDonnell Douglas* burden shifting test.  *McDonnell Douglas Corp.*, 411 U.S. at 802; *see Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) ("The burden-shifting framework laid out in *McDonnell Douglas* . . . governs retaliation claims under . . . Title VII").  Under the test, "[f]irst, the plaintiff must establish a *prima facie* case of retaliation.  If the plaintiff succeeds, then a presumption of retaliation arises and the employer must articulate a legitimate,

non-retaliatory reason for the action that the plaintiff alleges was retaliatory." *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (citations omitted); *see also Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 n.6 (2d Cir. 2011) (discussing the burden shifting analysis in retaliation context); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (same). If the employer succeeds at the second stage, then the presumption of retaliation dissipates, and the plaintiff must show that, but for the protected activity, he would not have been terminated. *See Nassar*, 570 U.S. at ---, 133 S. Ct. at 2534 (a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"); *see also Brooks v. D.C. 9 Painters Union*, No. 10-CV-7800, 2013 WL 3328044, at *4 (S.D.N.Y. July 2, 2013) ("If the defendant [articulates a legitimate, non-retaliatory reason], the plaintiff must offer 'proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" (quoting *Nassar*, 570 U.S. at ---, 133 S. Ct. at 2534)).

### i. Prima Facie Case

In order to establish a prima facie case of retaliation, a plaintiff must establish (1) participation in an activity protected by federal discrimination statute; (2) the defendant was aware of this activity; (3) an adverse employment action; and (4) a causal connection between the alleged adverse action and the protected activity. *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (citing *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)); *Summa*, 708 F.3d at 125; *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006). The burden at the summary judgment stage for Plaintiff is "'minimal' and '*de minimis*,'" and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient

to permit a rational finder of fact to infer a retaliatory motive." *Jute*, 420 F.3d at 173 (citations omitted). Defendant agrees that Plaintiff was terminated, thereby satisfying the adverse employment action element. Defendant disputes the first, second, and fourth elements. For the reasons set forth below, Plaintiff has failed to establish a prima facie case of retaliation.

### 1. Protected Activity

Plaintiff has failed to demonstrate that his mother engaged in protected activity. Under Title VII, protected activity includes both "opposing discrimination proscribed by the statute and . . . participating in Title VII proceedings." *Jute*, 420 F.3d at 173; *see also Tepperwien*, 663 F.3d at 567 ("Title VII . . . prohibits an employer from taking 'materially adverse' action against an employee because the employee opposed conduct that Title VII forbids or the employee otherwise engaged in protected activity." (citations omitted)); *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001) ("[Title VII] prohibits discrimination by an employer against an employee who 'has opposed any practice made an unlawful employment practice' by Title VII or who has 'participated in any manner in an investigation, proceeding, or hearing' under Title VII." (citations omitted)). Title VII's antiretaliation provision is "construed to cover a broad range of employer conduct," including terminating an individual for the protected activity of a close family member. *Thompson v. N. Am. Stainless, LP*, 562 U.S. ---, ---, 131 S. Ct. 863, 868 (2011); *see also Secka v. Dentserve Mgmt. Servs., Inc.*, No. 12-CV-2560, 2013 WL 563364, at *5 (S.D.N.Y. Feb. 11, 2013) (stating that Title VII "covers a broad range of employer conduct, prohibiting any activity that might 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination,' including retaliation against third parties if a reasonable worker would be dissuaded by such action" (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61; *Thomson*, 562 U.S. at ---, 131 S. Ct. at 867–69)); *Schwartz v. N.Y. State Ins. Fund*, No. 12-CV-

1413, 2012 WL 5587604, at *10 (S.D.N.Y. Aug. 28, 2012) (stating that Title VII's protection

"extends to retaliation against employees for protected activity engaged in by close third-parties

such as spouses" (citing *Thomson*, 562 U.S. at ---, 131 S. Ct. at 868)), *report and*

*recommendation adopted*, No. 12-CV-1413, 2012 WL 5675989 (S.D.N.Y. Nov. 15, 2012);

*Rodriguez-Monguio v. Ohio State Univ.*, No. 08-CV-00139, 2011 WL 335854, at *14–15 (S.D.

Ohio Jan. 31, 2011) (noting that third-party retaliation claims were permitted under *Thompson*

and allowing plaintiff to state a claim for third-party retaliation by relying on the protected

activity of her significant other, but ultimately granting employer's motion for summary

judgment as plaintiff failed to show a causal connection between the protected activity and the

alleged adverse actions), *aff'd*, 499 F. App'x 455 (6th Cir. 2012).

    Plaintiff has alleged that his mother opposed discrimination.  (Pl. Opp'n 7–8.)  In order to

oppose discrimination, Plaintiff or his mother need not have filed a formal complaint as long as

he or she complained of discriminatory conduct.  *See Cruz v. Coach Stores, Inc*., 202 F.3d 560,

566 (2d Cir. 2000) ("[T]he law is clear that opposition to a Title VII violation need not rise to the

level of a formal complaint in order to receive statutory protection, this notion of 'opposition'

includes activities such as 'making complaints to management, writing critical letters to

customers, protesting against discrimination by industry or by society in general, and expressing

support of co-workers who have filed formal charges.'" (quoting *Sumner v. U.S. Postal Serv*.,

899 F.2d 203, 209 (2d Cir. 1990))); *see also Bennett v. Hofstra Univ.*, 842 F. Supp. 2d 489, 500

(E.D.N.Y. 2012) (Title VII does not require a formal complaint.); *Martin v. State Univ. of N.Y.*,

704 F. Supp. 2d 202, 227 (E.D.N.Y. 2010) ("It is clearly established that 'informal complaints to

supervisors constitute protected activity under Title VII.'" (citations omitted)); *Russell v. County*

*of Nassau*, 696 F. Supp. 2d 213, 237 (E.D.N.Y. 2010) ("Indeed, Title VII's protection against retaliation extends to an employee who speaks out about discrimination not on her own initiative, but in answering questions during an employer's internal investigation if for no other reason than . . . [w]hen an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." (alterations in original) (quoting *Crawford v. Metro. Gov't of Nashville and Davidson Cnty. Tenn.*, 555 U.S. 271, 276 (2009)) (internal quotation marks omitted)).

According to Plaintiff, following a diversity training hosted by Kingsbrook in or around May 2009, his mother, Gemma Moore, asked the attorney who conducted the diversity training lecture whether "a claim of racism was actionable against a company that put white people into the highest positions of power, such as Vice President or Assistant Vice President, while at the same time excluding more qualified African American employees from those positions." (App A ¶ 10.) Plaintiff alleges that Earnest Liggins, Kingsbrook's Human Resources Manager, overheard Gemma Moore's conversation with the attorney. (*Id*. ¶ 11.) Plaintiff admits that the question "did not specifically mention Kingsbrook." (*Id*. ¶ 10)

Plaintiff has failed to prove that his mother engaged in protected activity. Plaintiff has testified that this question was asked by his mother and where it was asked, but he concedes that he was not present when the question was asked and has no personal knowledge of it being asked by his mother or the circumstances under which it was asked. (Pl. Dep. 193:9–194:6.) *See DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) ("[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set

out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" (quoting Fed. R. Civ. P. 56(c)(4)). Plaintiff has not presented any evidence that the question was asked by his mother or that the question was asked at a diversity training lecture. *See Billhofer v. Flamel Technologies, S.A.*, No. 07-CV-9920, 2013 WL 866778, at *3 (S.D.N.Y. Mar. 8, 2013) ("[T]he non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." (quoting *Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir. 1999))). Therefore, there is no admissible evidence that this question was in fact asked by Plaintiff's mother or that it was asked at a diversity training program.

Even assuming that Plaintiff had admissible proof that the question was asked by his mother, the question, in and of itself, is not protected activity. In order to engage in protected activity, an individual must "oppos[e] an employment practice made unlawful under [Title VII]," *Jackson v. N.Y. Dep't of Labor*, 709 F. Supp. 2d 218, 227 (S.D.N.Y. 2010), or "participate in any investigation, proceeding, or hearing under Title VII," *Martin*, 704 F. Supp. 2d at 227–28. Lodging informal complaints with supervisors or even certain third parties, such as a customer, may constitute protected activity, *Cruz*, 202 F.3d at 566 (2d Cir. 2000); however, the key question is whether the individual *opposed* actions of the employer that she had a "good faith, reasonable belief . . . violated the law." *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999) (quoting *Manoharan*, 842 F.2d at 593). The question as represented by Plaintiff was posed to a third party and asked about an unidentified entity, and is therefore not a statement opposing discrimination as required by Title VII. *See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013) (no protected activity where

"nothing in [plaintiff's] behavior . . . would have allowed her employer to 'reasonably have understood[] that [plaintiff's] opposition was directed at conduct prohibited by Title VII'"); *Manoharan v. Columbia Univ.*, 842 F.2d 590, 594 (2d Cir. 1988) (plaintiff did not engage in protected activity where he "neither pointed out discrimination against particular individuals nor discriminatory practices by [the employer]").  Plaintiff has not established that his mother was engaged in protected activity when she asked a question about an unidentified company. *Exchange, Inc., v. Global Healthcare Exchange, LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) (to be considered protected activity, the employee's complaint must put the employer on notice that discrimination prohibited by Title VII is occurring).

## 2. Defendant's Knowledge of the Protected Activity

Even assuming that the question asked by Plaintiff's mother about an unidentified company was protected activity, Plaintiff's retaliation claim nevertheless fails because Plaintiff cannot show that Defendant was aware of his mother's activity.  "In order to satisfy the requirement of employer knowledge, an employee must have made it clear that she was opposing activity made illegal by Title VII."  *Risco v. McHugh*, No. 10-CV-6314, 2012 WL 2161115, at *20 (S.D.N.Y. June 14, 2012) (citing *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)).  It is not necessary that Plaintiff prove that the specific actors knew of the protected activity as long as Plaintiff can demonstrate general corporate knowledge.  *See Papelino v. Albany Coll of Pharmacy of Union Univ.*, 633 F.3d 81, 92 (2d Cir. 2011) ("Even if the [corporate defendant's] agents who carried out the adverse action did not know about the plaintiff's protected activity, the 'knowledge' requirement is met if the legal entity was on notice."); *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) ("A jury, however,

can find retaliation even if the agent denies direct knowledge of a plaintiff's protected activities, for example, so long as the jury finds that the circumstances evidence knowledge of the protected activities or the jury concludes that an agent is acting explicitly or implicit upon the orders of a superior who has the requisite knowledge."); *Trivedi v. N.Y. Unified Court Sys. Office of Court Admin.*, 818 F. Supp. 2d 712, 736 (S.D.N.Y. 2011) ("A plaintiff need not prove that the specific actors within an organization were aware that the plaintiff made allegations of retaliation to make out a *prima facie* retaliation claim; rather, 'general corporate knowledge that the plaintiff has engaged in a protected activity' is sufficient." (citations omitted)).

Plaintiff has not presented any evidence that Kingsbrook or KHS was aware of his mother's question. Although Plaintiff alleged in his Complaint that Liggins, Kingsbrook's Human Resources Manager, overheard his mother's conversation with the attorney, Plaintiff has not presented any evidence to support that allegation. As discussed above, Plaintiff has no personal knowledge of the circumstances under which his mother's question was purportedly asked. (Pl. Dep. 193:9–194:6.) Moreover, there is no evidence that anyone at Kingsbrook or KHS became aware of the question after the training session. Plaintiff testified during his deposition that between the date of the training session in May of 2009 and his termination, no one at KHS or Kingsbrook said anything to him about the fact that his mother had asked the question. (Pl. Dep. 196:20–197:1.) While "general corporate knowledge that the plaintiff has engaged in a protected activity" is sufficient, there is no evidence that Kingsbrook or KHS had any knowledge of the question posed by Plaintiff's mother. *See Vuona v. Merrill Lynch & Co., Inc.*, No. 10-CV-6529, 2013 WL 271745, at *18 (S.D.N.Y. Jan. 24, 2013) (plaintiff failed to establish the knowledge requirement where she failed to "adduce[] facts sufficient to establish

[general corporate] knowledge," and "[t]he surrounding circumstances . . . [did] not 'evidence knowledge of the protected activities'"); *Stephan v. W. Irondequoit Cent. Sch. Dist.*, 769 F. Supp. 2d 104, 109 (W.D.N.Y. 2011) (dismissing plaintiff's retaliation claim because she "offer[ed] no evidence that the [defendant] had any knowledge of [her] protected activity before it made the decision to terminate her employment), *aff'd*, 450 F. App'x 77 (2d Cir. 2011); *Livingston v. ADECCO*, No. 03-CV-4871, 2005 WL 2305007, at *15–16 (E.D.N.Y. Sept. 21, 2005) (dismissing plaintiff's retaliation claim because she "elicited no evidence in support of her claim that [defendant] had knowledge of her purported protected activity, and because knowledge cannot be shown by inferences alone" (internal quotation marks omitted)).

### 3. Adverse Employment Action

Plaintiff has satisfied the adverse employment action prong. Plaintiff was terminated at the conclusion of the investigation into the loss of the optical equipment from the Clinic. Being fired is an adverse employment action. *See Sanchez v. Conn. Natural Gas Co.*, 421 F. App'x 33, 35 (2d Cir. 2011) (listing third element of prima facie case of retaliation as "termination from employment or other adverse employment action"); *Miller v. Praxair, Inc.*, 408 F. App'x 408, 410 (2d Cir. 2010) (noting that "typical examples of actionable adverse employment actions include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities'" (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000))); *Feingold*, 366 F.3d at 156 ("[Plaintiff] suffered an adverse employment action when he was fired."); *Reynoso v. All Foods, Inc.*, 908 F. Supp. 2d 330, 342 (E.D.N.Y. 2012) (stating plaintiff's "termination clearly constitutes an adverse employment action").

### 4.  Causal Connection

Assuming that Plaintiff could establish that his mother engaged in protected activity and that Defendant was aware that she did, Plaintiff arguably can show a causal connection between this alleged protected activity and his termination.  "[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action."[12] *Gorzynski*, 596 F.3d at 110–11 (quoting *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)); *see also Feingold*, 366 F.3d at 156 ("[T]he requirement that [plaintiff] show a causal connection between his complaints and his termination is satisfied by the temporal proximity between the two."); *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) ("We have held that a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation.").  There is no brightline rule for how long after a plaintiff has engaged in the protected activity that the adverse action must have occurred to benefit from the inference but generally courts measure the time in months.  *See, e.g. Gorzynski*, 596 F.3d at 110–11 ("Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five

---

[12]  The Supreme Court has recently ruled that under Title VII, a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. ---, ---, 133 S.Ct. 2517, 2534 (June 24, 2013).  While temporal proximity alone may still be sufficient at the prima facie stage, it is not sufficient at the pretext stage.  *Compare Rivera v. N.Y.C. Dep't of Correction*, No. 06-CV-862, 2013 WL 3297597, at *4 (E.D.N.Y. June 28, 2013) (incorporating the "but-for" causations standard into the prima facie case); *with Brooks v. D.C. 9 Painters Union*, No. 10-CV-7800, 2013 WL 3328044, at *4 (S.D.N.Y. July 2, 2013) (stating that "but for" causation must be proved if the defendant articulates a legitimate, non-retaliatory reason for the adverse employment action).

months is not too long to find the causal relationship."); *Smith v. Town of Hempstead Dept. of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 457 (E.D.N.Y. 2011) ("With regard to the establishment of a prima facie case through temporal proximity, the Second Circuit has not drawn a bright line as to how closely an adverse employment action must follow protected activity to imply that retaliation has taken place." (citing *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)); *Laudadio v. Johanns*, 677 F. Supp. 2d 590, 614 (E.D.N.Y. 2010) ("There is no bright-line beyond which a temporal relationship is too attenuated to prove causation." (citations omitted)).  Here, Plaintiff was terminated within two months of his mother's allegedly protected activity, thereby satisfying the temporal proximity requirement.

### ii. Pretext

Even if Plaintiff could establish a prima facie case of retaliation, Plaintiff cannot prove that but for the question posed by his mother, he would not have been terminated.  As discussed above, Defendant has established a legitimate, non-retaliatory reason for Plaintiff's termination. Under the recent Supreme Court decision in *University of Texas Southwestern Medical Center v. Nassar*, "Title VII retaliation claims must be proved according to traditional principles of *but-for* causation . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  570 U.S. at ---, 133 S. Ct. at 2533.  Therefore, during the final stage of the burden shifting framework, the plaintiff must show that retaliation was a but-for cause of the adverse employment action.  *See Brooks,* 2013 WL 3328044, at *4 (S.D.N.Y. July 2, 2013) (stating that "but for" causation must be proved if the defendant articulates a legitimate, non-retaliatory reason for the adverse employment action).

In order to establish but-for causation, Plaintiff would have to prove that his termination would not have occurred in the absence of a retaliatory motive.  Plaintiff has provided no

evidence that his termination was motivated by retaliation.  Instead, Plaintiff asks the Court to

infer that his termination was retaliatory based on the timing of his termination.  He claims that

because he had worked at the Clinic for approximately three years and no equipment ever went

missing, it is "therefore questionable that an 'unused' equipment is suddenly identified as

missing around the same time that plaintiff's mother was challenging the discriminatory actions

of the defendant."  (Pl. Opp'n 3.)  Plaintiff argues that, since he was "terminated without cause"

less than two months after his mother asked the question at the training session, "[i]t is plain for

any pertinent person to see that the Defendant just zeroed in on the Plaintiff" during the

investigation, "since he was their target for termination."  (*Id*. at 8.)[13]  As discussed above, there

is no evidence that Plaintiff's mother asked a question at the training session or that Defendant

was aware of it.  Plaintiff was terminated following an investigation into the theft of clinic

equipment, and Plaintiff has failed to establish that he would have kept his job notwithstanding

his alleged responsibility for, and inadequate reaction to, the theft of that equipment.  Plaintiff

has failed to meet his burden of providing sufficient evidence that, but for his mother's

participation in the alleged protected activity, he would not have been fired.  *See Nassar*, 570

U.S. at ---, 133 S.Ct. at 2532–33.

---

[13]  Even under the "motivating factor" standard that was in use in the Second Circuit prior
to the Supreme Court's recent decision in *Nassar*, 570 U.S. ---, 133 S.Ct. 2517, "temporal
proximity — while enough to support a prima facie case — was insufficient to establish pretext."
*Ben-Levy v. Bloomberg, L.P.*, No. 12-CV-2795, 2013 WL 1810953, at *2 (2d Cir. May 1, 2013)
(summary order); *see also Govori v. Goat Fifty, L.L.C.,* No. 12-CV-00857, 2013 WL 1197770, at
*2 (2d Cir. Mar. 26, 2013) (summary order) ("[W]hile temporal proximity between events may
give rise to a *prima facie case* of discrimination, 'such temporal proximity is insufficient to
satisfy [plaintiff's] burden to bring forward some evidence of pretext.'" (quoting *El Sayed v.
Hilton Hotels Corp*., 627 F.3d 931, 933 (2d Cir. 2010))).

### III.    Conclusion

For the reasons discussed above, Defendant's motion for summary judgment is granted in its entirety.

SO ORDERED:

_____s/MKB_____
MARGO K. BRODIE
United States District Judge

Dated: July 30, 2013
           Brooklyn, New York